Barclay Jewelry, Inc. v. Commissioner.
Barclay Jewelry, Inc. v. Commissioner
Docket No. 5078-63.
United States Tax Court
T.C. Memo 1965-265; 1965 Tax Ct. Memo LEXIS 67; 24 T.C.M. (CCH) 1443; T.C.M. (RIA) 65265; October 4, 1965
*67 Petitioner sold costume jewelry as agent for Barclay Company, a manufacturer, and sustained losses prior to 1958. In March 1958 all the stock of petitioner and Barclay Company was sold to the owners of Sally's Creations, a corporation in the same business. Barclay Company continued to manufacture; Creations sold its products. Petitioner was inactive until 1960, when it resumed selling as agent for Barclay Company. Held: Petitioner continued to carry on a trade or business substantially the same as that conducted before March 1958 and is not barred by section 382(a), I.R.C. 1954, from using the net operating loss carryovers from prior years. Lester H. Salter, for the petitioner. Frederick A. Griffen, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined deficiencies in income taxes of the petitioner for the calendar years 1960 and 1961 in the amounts of $4,115.25 and $729.96, respectively. The sole issue is whether section 382(a), Internal Revenue Code of 1954, bars the allowance of net operating loss deductions claimed on petitioner's returns. Some facts are stipulated. It is also stipulated that the findings of fact in the case of Barclay Company, et al., T.C. Memo 1964-279, are incorporated subject to the right of either party to object on grounds of *69 materiality and relevancy. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioner is a Rhode Island corporation organized in 1947. It employs an accrual method of accounting and filed income tax returns for the calendar years 1955 through 1961 with the district director of internal revenue at Providence, Rhode Island. The Barclay Company is a Rhode Island corporation organized in 1946 and engaged in the business of manufacturing and selling costume jewelry. Prior to March 12, 1958, all the stock of the petitioner and of Barclay Company was owned by Alvin Rice. Petitioner was a sales agent for Barclay Company, buying most of Barclay Company's products and reselling to wholesalers throughout the United States. In 1957 Barclay Company's total sales were $335,027.80 of which approximately $275,000 represented sales to petitioner. Petitioner bought all its merchandise from Barclay Company and the price paid by it amounted to approximately 83 percent of the price it received on resale. Sally's Creations, Inc., hereinafter referred to as Creations, is a corporation which, prior to March 12, 1958, was in *70 the business of manufacturing and selling costume jewelry and was a competitor of Barclay Company. The stock of Creations was held 45 percent by Louis I. Solmonson, 45 percent by Sally Greene, his sister, and 10 percent by Samuel Jacobs, all residents of Cranston, Rhode Island. Costume jewelry is a type of product made of base metals with a gold or silver finish and ornamented with imitation pearls or stones. Because of the style factor, manufacturers of costume jewelry generally create two sample lines a year for presentation to prospective buyers. The showings are held in May and November in Providence, Rhode Island, a principal area for the manufacture of this product. The manufacturer, or his representative, displays sample lines which are viewed by wholesalers and other prospective customers from all over the United States. Thereafter the manufacturer produces the jewelry in quantities sufficient to fill orders but generally not in excess of such quantities. The sample line is created by the designer, who, making use of available parts, attempts to predict the fashion trend for the coming season. Ordinarily, sample lines are started three to four months in advance of the showings. *71 The manufacturing end of the costume jewelry industry is seasonal, having the highest level of employment in October, November, and December and the lowest in February and March. In early 1958 Creations did not have a new line ready or in preparation for the coming May showing. In February 1958 Solmonson, learning that Rice desired to sell Barclay Company, inspected its plant and expressed an interest in buying its machinery, tools, molds, and designs. Solmonson was acting for Sally Greene and Jacobs, as well as for himself. Rice refused to sell such items as Solmonson requested but was willing to sell all his stock. A formula was agreed upon for determining the price. The books were not examined until the accountants for Solmonson and Rice met to prepare from Barclay Company's records the schedules for determining the price. On March 12, 1958, an agreement was signed for the purchase of Rice's stock in Barclay Company for $11,171.97 and all the stock of petitioner for $10, the shares in both corporations to be held by Solmonson, Sally Greene, and Jacobs in the respective percentages of 45, 45, and 10. After the purchase of the stock of Barclay Company and the petitioner by *72 Solmonson and his associates, the operations of Barclay Company were moved to a different location in Providence into space leased by Creations. Barclay Company there conducted manufacturing operations with machinery owned by Creations. After March 12, 1958, Barclay Company sold most of its jewelry to Creations for resale to wholesalers throughout the United States; Creations ceased manufacturing operations and was used thereafter only as a sales agent for Barclay Company; and petitioner ceased active selling operations and made no further sales in 1958 or in 1959. Petitioner had been actively engaged in business until the sale of its stock. There was no purpose for the purchase of petitioner's stock independent of the purpose of acquiring Barclay Company. The transfer of the petitioner's stock was part of the sale of that company. The purchasers desired to avoid having an existing corporation of a similar name owned by other persons which might become a competitor of Barclay Company. The principal purpose for the purchase of Barclay Company's stock was not the evasion or avoidance of Federal income tax. The principal purpose of that purchase was the acquisition of Barclay Company's *73 inventory of tools, molds, models, and other items so that the purchasers could make from them an acceptable line of jewelry for Creations to exhibit at the May show for which Creations had previously reserved a room. After the sale the purchasers gave their principal attention to creating a new line of costume jewelry from the materials owned by Barclay Company for the showing to be held in May. They had no immediate plan for the petitioner. They instructed their accountant to file whatever reports were required to keep the petitioner active as a corporation. They loaned $200 to the petitioner for incidental expenses and had the petitioner invest $102 in the stock of Beaumode Jewelry, another corporation. The petitioner filed income tax returns for 1958 and 1959, claiming deductions for net operating losses from previous years equal to the net income reported. In 1960 the new owners of Barclay Company and petitioner expanded the line of merchandise manufactured by Barclay Company. In order to reach some of the former customers of the petitioner which were competitors of the customers of Creations, they caused the petitioner to resume business activity in 1960, selling products *74 of Barclay Company of the same kind it had sold prior to 1958 and to customers of the same type. As of December 31, 1957, the tax return of petitioner listed capital stock at a stated value of $7,500 and a deficit in surplus of $8,563.69. Petitioner incurred the following net operating losses: 1955
$18,339.55
1956
476.07
1957
1,996.41
Petitioner's income tax return for 1958 reported total income of $7,647.25, deductions of $6,409.36, net income of $1,237.89, and claimed a net operating loss deduction of that amount, leaving no taxable income. Petitioner's income tax return for 1959 reported miscellaneous income of $208.75, deductions of $128.85, net income of $79.90, and claimed a net operating loss deduction of that amount, leaving no taxable income. The income resulted from the collection of part of a bad debt previously charged off. The petitioner's tax return for 1959 showed the following amounts on the balance sheets for the beginning and end of the year: Jan. 1
Dec. 31
Cash
$ 374.51
$ 352.10
Receivables
71.74
Investments
102.00
Total Assets
$ 446.25
$ 454.10
Loans payable
$ 200.00
$ 200.00
Other liabilities
72.05
Common stock
7,500.00
7,500.00
Surplus (deficit)
(7,325.80)
(7,245.90)
Liabilities and Capital
$ 446.25
$ 454.10
*75 Petitioner's income tax returns for 1960 and 1961 showed the following: 1960
1961
Gross receipts
$81,881.70
$122,223.79
Cost of goods sold
66,504.88
103,522.12
Gross profit
15,376.82
18,701.67
Deductions
1,659.33
6,715.19
Taxable income
13,717.49
11,986.48
Net operating loss de-
duction
13,717.49
2,433.21
Difference
None
$ 9,553.27
Income tax
None
2,865.98
The respondent disallowed the deductions claimed on the petitioner's returns for 1960 and 1961 as net operating loss deductions on the ground that the petitioner failed to establish that such deductions are allowable. The respondent determined deficiencies in income tax of Barclay Company for 1958, 1959, and 1960 based upon the disallowance of net operating loss deductions claimed for losses prior to 1958. In T.C. Memo 1964-279 this Court found as facts that the principal purpose for the acquisition of Barclay Company's stock was not the evasion or avoidance of Federal income tax by securing the benefit of a deduction which would not otherwise be enjoyed and that after March 12, 1958, Barclay Company continued to carry on a trade or business substantially the same as that conducted *76 prior to the change in ownership. Opinion The issue is whether the petitioner after March 12, 1958, has continued to carry on a trade or business substantially the same as that conducted before that date, within the meaning of section 382(a)(1)(C) of the Internal Revenue Code of 1954. [1]
*77 Prior to that date the petitioner was a sales agent for Barclay Company, a manufacturer of costume jewelry. It ceased active business immediately after the sale of its stock in March 1958 and remained inactive until 1960. Its place as selling agent for Barclay Company was taken by Creations, which was owned by the purchasers of the stock of petitioner and of Barclay Company. The petitioner's charter was not surrendered, and it was kept alive while the new owners decided what to do with it. They were occupied with other pressing matters following the purchase of stock and it was not until 1960 that the petitioner again became active. It then engaged in business again as a sales agent for Barclay Company, which had in the meantime continued to function as a manufacturer of costume jewelry. Petitioner in 1960 was carrying on the same business it had conducted prior to March 1958, selling the same products of the same manufacturer, and to the same customers. The respondent contends that the petitioner has not continued to carry on the same business it conducted before the sale of its stock. Although the petitioner in 1960 engaged in the same kind of business it was carrying on prior *78 to March 12, 1958, respondent says that the suspension of its business from that date until 1960, which was not due to causes beyond its control, makes section 382(a) applicable to prohibit the deduction claimed. Respondent says that to permit the deduction the business must be continued for at least two years after the purchase. Respondent cites Glover Packing Company of Texas v. United States, 328 F. 2d 342 (Ct. Cl., 1964). In that case there was a suspension of business for several years prior to the sale of stock. The court concluded that the cessation was more than temporary and evidenced an intention to abandon, and that the subsequent activity was not a continuation of the former business but the inauguration of a new business of the same kind. See Fawn Fashions, Inc., 41 T.C. 205 (1963), also involving a suspension of business prior to the sale. Respondent says that the evidence in the present case demonstrates not only a lack of firm purpose to continue petitioner's operations but also an intention to abandon. The petitioner contends that in 1960 it continued to carry on a business substantially the same as that it had carried on before the sale *79 in March 1958; it resumed selling as a sales agent for Barclay Company, the same manufacturer; the products sold were the same and the customers were the same in general. As the petitioner points out, this Court has held that inactivity of a corporation of about one year's duration prior to the change of ownership, followed by resumption of the same type of business under new owners, does not destroy the continuity required by section 382(a). H. F. Ramsey Co., 43 T.C. 500 (1965). In that case we noted there was no evidence that the selling stockholder intended to terminate the business and that the inactivity was only temporary. In the present case, after the sale the accountant for the purchasers was instructed to file whatever reports were required to keep the corporation active, and the purchasers loaned money to the petitioner for incidental expenses. Also, the petitioner purchased stock in another corporation, Beaumode Jewelry. Tax returns were filed for 1958 and 1959. These circumstances show that there was no abandonment of the corporation as a business entity. The resumption of selling activity by the petitioner in 1960 came about through the expansion of *80 the line of merchandise manufactured by Barclay Company. The new owners sought to reach the former customers of the petitioner which were competitors of the customers of Creations. Untile 1960 the owners considered the line too small to offer to these customers. The income against which the petitioner seeks to offset the prior losses was produced by substantially the same business that produced the losses. The only difference is that the petitioner is owned by different persons, as is also the manufacturer of its products. Change of ownership alone is not enough to make section 382(a) applicable to deny the deduction. H. F. Ramsey Co., supra, at p. 516. Cf. Jackson Oldsmobile, Inc. v. United States, 237 F. Supp. 779 (M.D. Ga., 1964). It is entirely possible that the new owners of the petitioner, who had no immediate plan for using it at the time of its purchase, subsequently decided to use it, in addition to Creations, as a sales agent for Barclay Company premarily in order to make use of the loss carryovers available to it. The evidence, however, does not compel such a conclusion. There is no suggestion that section 269(a) [2] is applicable to deny *81 the claimed deduction on the ground that the principal purpose of the acquisition of petitioner's stock was the evasion or avoidance of income tax by securing the benefit of a deduction not otherwise available. In view of the findings of this Court in the case of Barclay Company such a contention is untenable. The petitioner was acquired in the same purchase. *82 We find that petitioner in 1960 and 1961 continued to carry on a trade or business substantially the same as that conducted before March 12, 1958, and is entitled to use the net operating loss deductions claimed on its tax returns. Decision will be entered for the petitioner. Footnotes
1. SEC. 382. SPECIAL LIMITATIONS ON NET OPERATING LOSS CARRYOVERS. (a) Purchase of a Corporation and Change in Its Trade or Business. - (1) In General. - If, at the end of a taxable year of a corporation - (A) any one or more of those persons described in paragraph (2) own a percentage of the total fair market value of the outstanding stock of such corporation which is at least 50 percentage points more than such person or persons owned at - (i) the beginning of such taxable year, or (ii) the beginning of the prior taxable year, (B) the increase in percentage points at the end of such taxable year is attributable to - (i) a purchase by such person or persons of such stock, the stock of another corporation owning stock in such corporation, or an interest in a partnership or trust owning stock in such corporation, or (ii) a decrease in the amount of such stock outstanding or the amount of stock outstanding of another corporation owning stock in such corporation, except a decrease resulting from a redemption to pay death taxes to which section 303 applies, and (C) such corporation has not continued to carry on a trade or business substantially the same as that conducted before any change in the percentage ownership of the fair market value of such stock, the net operating loss carryovers, if any, from prior taxable years of such corporation to such taxable year and subsequent taxable years shall not be included in the net operating loss deduction for such taxable year and subsequent taxable years.↩
2. SEC. 269. ACQUISITIONS MADE TO EVADE OR AVOID INCOME TAX. (a) In General. - If - (1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation.↩